James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-2219 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| RIVERWALK RANCH CROSSING HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for partial summary judgment. (ECF No. 40). Defendants Riverwalk Ranch Crossing Homeowners Association ("the HOA") (ECF No. 50) and SFR Investments Pool 1, LLC ("SFR") (ECF No. 51) responded, to which BANA replied (ECF No. 52).

Also before the court is SFR's motion for summary judgment. (ECF No. 41). BANA filed a response (ECF No. 47), to which SFR replied (ECF No. 55).

Also before the court is the HOA's motion for summary judgment. (ECF No. 42). Defendant Absolute Collection Services, LLC ("ACS") joined (ECF No 43) and BANA filed a response (ECF No. 49), to which the HOA replied (ECF No. 54).

Also before the court is the parties' stipulation for an extension of time to file responses. (ECF No. 44).

**I.     Facts**

This case involves a dispute over real property located at 4508 Silverwind Road, North Las Vegas, Nevada 89031 (the "property").

On August 11, 2009, Alan Kolb ("the borrower") obtained a loan in the amount of $191,627.00 from DHI Mortgage Company, Ltd. in order to purchase the property. (ECF No. 40). The loan was secured by a deed of trust recorded on September 4, 2009. (ECF No. 40). The deed of trust was assigned to BANA via an assignment of deed of trust recorded on March 21, 2012. (ECF No. 40).

On November 2, 2011, ACS, acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,281.91. (ECF No. 40). On February 10, 2012, ACS recorded a notice of default and election to sell, stating an amount due of $2,240.08. (ECF No. 40). On June 20, 2012, ACS recorded a notice of trustee's sale, stating an amount due of $3,852.62. (ECF No. 40).

On March 8, 2012, BANA requested the superprioirty amount of the HOA lien from ACS. (ECF No. 40). On behalf of the HOA, ACS sent a letter to BANA refusing to provide a ledger. (ECF No. 40). ACS's letter to BANA further stated that "We recognize [BANA's] position as the first mortgage company as the senior lien holder." (ECF No. 40-F).

On November 6, 2012, Val Grigorian ("Grigorian") purchased the property for $6,300.00 at the foreclosure sale. (ECF No. 40). The trustee's deed upon sale was recorded on November 8, 2012. (ECF No. 40). Grigorian transferred his interest in the property to SFR via quitclaim deed recorded on September 17, 2014. (ECF No. 40).

BANA filed the underlying complaint on September 21, 2016. (ECF No. 1). The complaint alleges four claims of relief: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the HOA and ACS; (3) wrongful foreclosure against the HOA and ACS; and (4) injunctive relief against SFR. (ECF No. 1).

In the instant motions, BANA moves for partial summary judgment on its claim for quiet title/declaratory judgment (ECF No. 40) and the HOA and SFR move for summary judgment as to all claims asserted by BANA (ECF Nos. 41, 42).

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

In the HOA and SFR's motions, they contend that summary judgment in their favor is proper because, *inter alia*, the foreclosure sale extinguished BANA's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF Nos. 70, 71). The HOA and SFR further contend that the foreclosure sale should not be set aside because the price paid at the foreclosure sale was commercially reasonable, the HOA complied with all notice requirements under NRS 116 and BANA received actual notice, BANA has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), BANA is not entitled to an equitable remedy, and because SFR is a bona fide purchaser. (ECF Nos. 41, 42). The court will address each argument as it sees fit.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v.*

*Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[1] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").

Based on *Shadow Wood*, the recitals therein are conclusive evidence that the foreclosure lien statutes were complied with—*i.e.*, that the foreclosure sale was proper. *See id.*; *see also Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 (Nev. App. Apr. 17, 2017) ("And because the recitals were conclusive evidence, the district court did not err in finding that no genuine issues of material fact remained regarding whether the foreclosure sale was proper and granting summary judgment in favor of SFR."). Therefore, pursuant to *SFR Investments*, NRS 116.3116, and the recorded trustee's deed upon sale in favor of SFR, the foreclosure sale was proper and extinguished the first deed of trust.

Notwithstanding, and despite the HOA and SFR's contention otherwise, the court retains the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See Shadow Wood Homeowners Assoc.*, 366 P.3d at 1112 ("When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether

---

[1] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

James C. Mahan
U.S. District Judge

an innocent party may be harmed by granting the desired relief."). Accordingly, to withstand summary judgment in the HOA and SFR's favor, BANA must raise colorable equitable challenges to the foreclosure sale or set forth evidence demonstrating fraud, unfairness, or oppression.

While the court will analyze BANA's equitable challenges regarding its quiet title, the court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

Here, BANA argues that the court should grant its motion because the foreclosure sale for less than 5% of the property's fair market value ($137,000.00) is grossly inadequate and because BANA can establish evidence of fraud, unfairness, or oppression. (ECF No. 40). However, BANA overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 40) (emphasis omitted).

In response, the HOA and SFR argue that the foreclosure sale was commercially reasonable because the sale price ($6,300.00) was not grossly inadequate given the conditions under which the property was sold and because BANA has not presented any evidence of fraud, unfairness, or oppression. (ECF Nos. 41, 42).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[2]

---

[2] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BANA's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement

bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

1  at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition
2  to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

3  Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Here, BANA relies on its repeated assertion that merely offering to tender the superpriority amount is sufficient to show fraud, unfairness, or oppression. However, the amount due on the date of BANA's tender was set forth in the notice of default and election to sell. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BANA chose to merely offer to tender what it calculated as the superiority amount.

BANA also cites *ZYZZX2 v. Dizon*, no. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016) to support its position that the sale to Grigorian was commercially unreasonable. (ECF No. 40). In *ZYZZX2*, the subject property was governed by CC&R's which contained a mortgage protection clause. No. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 at *5. Prior to foreclosure, the HOA trustee sent out misleading mailings that suggested the foreclosure sale would not extinguish the first deed of trust on the property. *Id.* at *4. The property sold at a foreclosure sale for $15,000, over five times the value of the HOA's lien. *Id.* at *1. This court held that the mailings, in addition to the CC&R's mortgage protection clause and the "disproportionately low price" at foreclosure,[3] constituted unfairness that warranted setting aside the sale as commercially unreasonable. *Id.* at *4–5.

---

[3] The property was valued at $210,863, *ZYZZX2*, 2016 WL 1181666, at *1, making a sale price of $15,000 approximately 7% of fair market value.

James C. Mahan
U.S. District Judge

- 9 -

Here, in its written response to BANA's pre-foreclosure request for the superprioirty amount of the HOA lien, ACS stated that "We recognize [BANA's] position as the first mortgage company as the senior lien holder." (ECF No. 40-F). Further, Grigorian paid $6,300.00 at the foreclosure sale for the property with a fair market value estimated at $137,000.00. (ECF No. 40). This price was just over one and a half times the lien interest being foreclosed upon stated in the notice of trustee's sale ($3,852.62), and 3.4% of the alleged fair market value of the property at the time of foreclosure.

The court also notes that the trustee's deed upon sale states on its first page that "[t]his conveyance is made pursuant to the powers granted to [the HOA] and conferred upon appointed trustee by the provisions of the Nevada Revised Statutes, [the CC&R's] recorded . . . on May 22, 2006 and that certain [n]otice of [d]elinquent [a]ssessment [l]ien recorded on November 2, 2011 . . . ." (ECF No. 40-G). As in *ZYZZX2*, the HOA's CC&R's in this case contained a mortgage protection clause. (ECF No. 40-J).

These facts are legally indistinguishable from the facts of *ZYZZX2*. *Cf.* 2016 WL 1181666 (misleading statements regarding the effect of foreclosure, coupled with a sale price of 7% of fair market value and CC&R's containing a mortgage protection clause warranted setting aside a sale as commercially unreasonable). In fact, Grigorian paid proportionally less for the property here than did the buyer at the foreclosure sale in *ZYZZX2*. (ECF No. 40); *ZYZZX2*, no. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 at *1. Accordingly, the court will set aside the foreclosure sale as commercially unreasonable. *See id.* Therefore, BANA's first deed of trust was not extinguished by the foreclosure proceedings.

The court will grant BANA's motion for summary judgment on its claim for quiet title as to SFR and as to any sub-priority interest held by defendant HOA. However, as the court holds that the foreclosure sale was commercially unreasonable and exercises its equitable power to void the sale, BANA's interest is subordinate to any superpriority interest held by the HOA.

**IV. Conclusion**

In light of the foregoing, BANA has shown that it is entitled to judgment as a matter of law. The court holds that the foreclosure sale was commercially unreasonable, and BANA's first

deed of trust continues to encumber the property.  Therefore, the court will grant BANA's motion for partial summary judgment as to its claim for quiet title/declaratory judgment (ECF No. 40) and deny SFR (ECF No. 41) and the HOA's (ECF No. 42) summary judgment motions.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for partial summary judgment (ECF No. 40) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the SFR's motion for summary judgment (ECF No. 41) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 42) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the parties' stipulation for an extension of time to file responses (ECF No. 44) be, and the same hereby is, GRANTED

The clerk is instructed to enter judgment accordingly and close the case.

DATED June 28, 2018.

_____
UNITED STATES DISTRICT JUDGE